IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
       PELVIC REPAIR SYSTEM
       PRODUCTS LIABILITY LITIGATION
                                          MDL No. 2326

-------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Faye M. Foreman v. Boston Scientific Corp.*          No. 2:13-cv-15591

**MEMORANDUM OPINION AND ORDER**
**(Defendant's Motion for Summary Judgment Based on Statute of Limitations)**

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 36]. For the reasons set forth below, the Motion is **DENIED**.

    **I.**    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Foreman's case was selected as a Wave 2 case by the plaintiffs.

On September 2, 2009, Ms. Foreman was surgically implanted with the Advantage Transvaginal Mid-Urethral Sling System (the "Advantage"), a product manufactured by BSC, to treat SUI. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 36], at 2; Pl. Fact Sheet [Docket 36-1], at 4). She received her surgery at a hospital in Hayward, California. (Mem. in Supp. [Docket 36], at 2). The surgery was performed by Dr. Michael Fogarty. (Pl. Fact Sheet [Docket 36-1], at 4). The Advantage was later removed by Dr. Xiufen Ding. (*Id.* at 5). Ms. Foreman claims that as a result of implantation of the Advantage, she has experienced pain and injury, including urinary incontinence and dyspareunia. (Mem. in Supp. [Docket 36], at 2; Pl. Fact Sheet [Docket 36-1], at 5). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Pl.'s Short Form Compl. [Docket 1] ¶ 13). In the instant motion, BSC argues that each of the plaintiff's claims is barred by California's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Foreman's case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as Ms. Foreman did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Foreman received the Advantage implantation surgery in California. Thus, the choice-of-law principles of California guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of California law to the plaintiff's claims. In tort actions, California follows the "governmental interest" approach in determining choice of law questions. *Kasel v. Remington Arms Co.*, 101 Cal. Rptr. 314, 327 (Ct. App. 1972). "Under choice-of-law rules, the trial court determines

whether the law of other states is materially different and whether other states have an interest in having their law applied, and if so which state's interest would be more impaired if its policy were subordinated to the law of another state." *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145, 159 (Ct. App. 2001). Here, the implantation surgery that allegedly resulted in Ms. Foreman's injuries took place in California. (Pl.'s Short Form Compl. [Docket 1] ¶ 11). Ms. Foreman is a California resident. (*Id.* ¶ 4). No other states appear to have an interest in having their laws applied. Thus, I apply California's substantive law—including California's statutes of limitations—to this case.

### III. Discussion

"Resolution of the statute of limitations issue is normally a question of fact." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 922 (Cal. 2005). Personal injury claims are subject to a two-year statute of limitations. Cal. Civ. Proc. Code § 335.1 (West 2015). Although breach of warranty claims are typically subject to a four-year statute of limitations, Cal. Com. Code § 2725(1) (West 2015), when such a breach is related to an underlying personal injury claim, the statute of limitations governing personal injury claims applies instead. *Rivas v. Safety-Kleen Corp.*, 119 Cal. Rptr. 2d 503, 513 (Ct. App. 2002). Thus, a two-year statute of limitations governs all of Ms. Foreman's claims. The limitations period runs when the cause of action accrues. *Fox*, 110 P.3d at 920. "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Id.* (quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999)).

However, an exception to the general rule of accrual is the "discovery rule," which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* The term "reason to discover" is defined as having "reason at least to

5

suspect a factual basis for" the elements of a cause of action. *Id.* In such an analysis, a court need not "take a hypertechnical approach" and analyze each individual element of a cause of action; rather, it need only examine the "generic elements" of wrongdoing, causation, and harm. *Id.* (internal quotation marks omitted). Thus, for example, instead of examining whether a plaintiff "suspect[s] facts supporting each specific legal element of a particular cause of action," a court can look to whether a plaintiff "suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her," thereby triggering the statute of limitations. *Id.*; *Rivas*, 119 Cal. Rptr. at 509 (quoting *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (Cal. 1988)); *see Fox*, 110 P.3d at 920 n.2 ("At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a 'person's physical condition' *and* its 'negligent cause.' Thus, physical injury alone is often insufficient to trigger the statute of limitations.'" (emphasis in original) (citations and internal quotation marks omitted)).

Here, BSC argues that Ms. Foreman was on notice of the connection between the Advantage and her claimed injuries as of July 28, 2010, when she consulted with Dr. Ding regarding problems with her mesh implant. (Mem. in Supp. [Docket 36], at 8). On that day, Ms. Foreman decided that she "wanted the thing taken out" and opted to have Dr. Ding perform the removal procedure. (*Id.*; Foreman Dep. [Docket 67-1], at 153:4). At the very latest, BSC argues, Ms. Foreman was on notice as of August 12, 2010, when she underwent her mesh removal procedure. (Mem. in Supp. [Docket 36], at 9). Thus, BSC contends, Ms. Foreman's claims were time barred by July 29, 2012, or, alternatively, by August 13, 2012. (*Id.*). Because Ms. Foreman did not file suit until June 25, 2013, BSC argues that her complaint fell outside the statute of limitations by nearly a year. (*Id.*).

Viewing the facts in the light most favorable to the nonmovant, although Ms. Foreman first attributed her injury to the Advantage by July 28, 2010, thereby fulfilling the generic elements of causation and harm, Ms. Foreman testified that she did not know that her injury was the result of possible wrongdoing until she saw a television commercial for mesh litigation in late 2011: "I . . . knew that I had had [the Advantage implant] removed, but I didn't know there was anything wrong with an implant. . . . Up until I saw the ads, I thought it was just my body. . . . I thought my body rejected it." (Foreman Dep. [Docket 36-2], at 28:14–16, 252:6–7, 255:11). Therefore, at the very least, whether a reasonable person would have had reason to suspect her injuries were due to wrongdoing merely because she opted to have her implant removed is a question best left to the jury. *See Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005); *see also id.* at 925 ("It would be contrary to public policy to require plaintiffs to file a lawsuit at a time when the evidence available to them failed to indicate a cause of action." (internal quotation marks omitted)). Consequently, a reasonable jury could find that Ms. Foreman did not know or should not have known about BSC's possible wrongful conduct until late 2011. Given that Ms. Foreman filed suit on June 25, 2013, a reasonable jury could find that Ms. Foreman's claims are not time barred. On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion [Docket 36] with respect to Ms. Foreman's claims.

### IV. Conclusion

As explained above, the defendant's Motion [Docket 36] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    March 19, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE